**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-203 (JDB)** |
| **v.** | : | |
| | : | |
| **ALEXANDER SHEPPARD,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S FURTHER RESPONSE IN OPPOSITION TO DEFENDANT'S**
**NOTICE OF PUBLIC AUTHORITY DEFENSE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, files this supplemental briefing concerning defendant Alexander Sheppard's ("Sheppard" and the "defendant") Notice of Public Authority Defense, ECF 40, in response to the Court's inquiry during the status hearing on December 2, 2022, and respectfully renews its request that the Court prohibit the defendant from making arguments or attempting to introduce non-relevant evidence that former President Trump (or any other Executive Branch official) authorized the defendant to attack the U.S. Capitol and thereby raise affirmative defenses of public authority or entrapment-by-estoppel.

Sheppard's assertion that he cannot be held criminally liable because his actions were authorized by former President Trump must be precluded because, as Chief Judge Beryl Howell has recognized, "following orders, without more, can[not] transform an illegal act into a legal one" and "even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability." *United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021). Indeed, judges in this District have repeatedly rejected a defendant's attempt to rely on the entrapment-by-estoppel defense to counterbalance the strength of the government's case during a

challenge to the defendant's pretrial detention. *See also United States v. Chansley*, 525 F. Supp. 3d 151, 168 (D.D.C. 2021) ("The Court need not dwell on defendant's invocation of the estoppel-by-entrapment defense. The same argument was raised and rejected in another case involving a participant in the January 6th events, and the Court adopts the reasons for rejecting that argument set forth there by Chief Judge Beryl Howell.").

Moreover, on at least two occasions, other judges of this District have precluded defendant from raising one or both defenses at trial. Judge Walton, applying the case law described below, precluded a January 6 defendant from invoking the entrapment-by-estoppel and public authority defenses at trial. *See United States v. Thompson*, No. 21-cr-161-RBW, Dkt. 69 at 3-4 (D.D.C. Mar. 25, 2022). Judge Kollar-Kotelly did the same with respect to the first of those defenses. *United States v. Grider*, No. CR 21-022 (CKK), 2022 WL 3030974, at *2-4 (D.D.C. Aug. 1, 2022). As demonstrated by those cases, judges of this District have determined well in advance of trial that those defenses can and should be precluded. The question of whether a defendant may seek to introduce evidence in support of public authority and/or entrapment by estoppel defenses presents a threshold legal determination for the judge, and not the trier of fact, to adjudicate. Where, as a here, the defendant cannot meet his threshold burden, the Court should preclude defendant as a matter of law from making arguments or attempting to introduce non-relevant evidence in support of those affirmative defenses.

As a matter of law, neither defense could apply on these facts and so Sheppard cannot invoke either at trial. The entrapment-by-estoppel defense applies only if the defendant was "actively misled . . . about the state of the law defining the offense," and relied on that misleading advice. *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018). No such advice was given to Sheppard on or before January 6, and Sheppard has not proffered any evidence to the contrary.

The public authority defense, meanwhile, applies only to a "defendant who knows the conduct he has been authorized to commit is illegal," but believes he is acting as an agent of a government official who possessed actual authority to order his conduct. *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015). The defense is

> narrowly defined . . . and a defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites. First . . . a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue, and the defendant must have reasonably relied on that authorization when engaging in that conduct. Second, the government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question.

*Id.* at 484. Here, no executive official had actual authority to ask Sheppard to unlawfully enter the Capitol, to participate in overrunning the police line in the Crypt, to race through the building to the entrance of the Speaker's Lobby while it was being protected by Capitol Police, to yell in the direction of the officers, and to obstruct Congress's certification of the Electoral College vote. Moreover, both defenses also require that the defendant's reliance or belief be *reasonable*. Even if Sheppard believed that former President Trump authorized him to engage in illegal conduct, or that the statutes he is now charged with had been interpreted to permit his conduct, neither belief would be reasonable.

"In a variety of procedural contexts, the vast majority of cases have held, as a matter of law, that the defense was unavailable on the facts of the case." *United States v. Conley*, 859 F. Supp. 909, 926 (W.D. Pa. 1994). Courts have routinely rejected either jury instructions or requests to put on evidence by defendants whose proffered evidence fails, as a matter of law, to meet the defenses' requirements. *E.g.*, *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994) (affirming denial of motion to appoint psychological expert to testify in support of entrapment-by-

estoppel defense); *United States v. Weitzenhoff*, 35 F.3d 1275, 1290 (9th Cir. 1993) (upholding refusal to instruct jury on entrapment-by-estoppel defense); *United States v. Brebner*, 951 F.2d 1017, 1024-27 (9th Cir. 1991) (affirming exclusion of evidence purporting to raise the defense as immaterial as a matter of law); *United States v. Etheridge*, 932 F.2d 318, 320-21 (4th Cir. 1991) (order granting motion in limine precluding evidence upheld).

In *United States v. Thompson*, No. 21-cr-161-RBW, the defendant was charged with Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and (2) (Count One); Theft of Government Property under 18 U.S.C. § 641 (Count Two); Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1) (Count Three); Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2) (Count Four); Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D) (Count Five); and Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G) (Count Six). In early January 2022, Thompson filed a pretrial motion seeking to have the U.S. Marshals Service serve subpoenas on former President Trump and others (including Rudolph Giuliani and other members of the former President's "inner circle"). *Id.* Dkt. 44 at 2. Judge Walton denied that motion, *id*. Dkt. 51, and directed Thompson to explain why those witnesses had relevant testimony. Thompson's filing asserted, in relevant part, that he intended to rely upon their testimony in support of two affirmative defenses: public authority and entrapment-by-estoppel. In response, the United States argued that the defendant should be precluded from asserting both defenses. Judge Walton agreed and issued an order finding that the "testimony of the putative witnesses . . . is inadmissible in support of either of the first two versions of the public authority defense as described by the defendant." *Id.* Dkt. 69 at 2.

At trial, the jury heard evidence of certain statements made by former President Trump and Rudolph Giuliani on January 6, 2021, but the Court cautioned the jury that such statements "had been admitted for a limited purpose" and instructed the jury that "[y]ou're not to consider that evidence for any other purposes.  Neither former president Donald Trump nor Rudy Giuliani actually had the power to authorize or make legal the alleged crimes charged in this case."  April 14, 2022 Transcript at 618-619 (attached hereto as Exhibit 1).  The Court did not instruct the jury on the public authority or entrapment-by-estoppel affirmative defenses.

Likewise, in *United States v. Grider*, No. CR 21-022 (CKK), the defendant was charged with Civil Disorder under 18 U.S.C. § 231(a)(3) (Count One); Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and (2) (Count Two); Destruction of Government Property under 18 U.S.C. § 1361 (Count Three); Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2) (Count Five); Engaging in Physical Violence in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(4) (Count Six); Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D) (Count Seven); Act of Physical Violence in the Capitol Grounds or Buildings under 40 U.S.C. § 5104(e)(2)(F); and Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G) (Count Nine).  On June 22, 2022, Grider filed a "Notice of Intent to Raise Public Authority Defense," *id.* Dkt. 102, and the following day, Judge Kollar-Kotelly issued a Minute Order directing legal briefing on the issue.  On July 7, 2022, Grider filed his "Brief in Support of Defendant's Notice of Intent to Raise Public Authority Defense." *Id.* Dkt. 108.  In his brief, Grider pointed to language from former President Trump's speech on January 6, 2021, as the basis for his assertion of the affirmative defense.  *Id.* at 3.  The Government filed its opposition on July 20,

2022, noting that the entrapment-by-estoppel defense applies only where a defendant was "actively

misled . . . about the state of the law defining the offense" and relied upon that misleading advice,

and asking that the Court preclude the defense in advance of trial.  *Id.* Dkt. 111 at 6 (citing and

quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).

Judge Kollar-Kotelly rejected Grider's proposed affirmative defense and issued a

Memorandum and Order explaining that "[b]ecause no such defense is available under Defendant's

proffered facts, the Court shall not read an entrapment-by-estoppel instruction to the jury." *United

States v. Grider*, 2022 WL 3030974, *1 (D.D.C. Aug. 1, 2022) (Kollar-Kotelly, J.).[1]  In particular,

Judge Kollar-Kotelly cited and quoted Chief Judge Howell's description of the defense as requiring

the defendant to meet four separate elements:

> To win an entrapment-by-estoppel claim, a defendant criminally
> prosecuted for an offense must prove (1) that a government agent
> actively misled him about the state of the law defining the offense;
> (2) that the government agent was responsible for interpreting,
> administering, or enforcing the law defining the offense; (3) that the
> defendant actually relied on the agent's misleading pronouncement
> in committing the offense; and (4) that the defendant's reliance was
> reasonable in light of the identity of the agent, the point of law
> misrepresented, and the substance of the misrepresentation.

*United States v. Chrestmann*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (internal quotations and

brackets omitted) (quoting *Cox*, 806 F.3d at 1191).  In that case, the Chief Judge's analysis focused

on the fourth element, namely, whether reliance upon former President Trump's statements was

reasonable.  *Id.* 31-33.  In *Grider*, however, Judge Kollar-Kotelly focused on the first, rather than

final prong, to reject the applicability of the affirmative defense, observing that "[r]egardless of

whether Defendant can satisfy the fourth prong, reliance, he certainly cannot satisfy the first prong,

---

[1] That case is presently scheduled for bench trial on December 12, 2022.  *See* Minute Order
dated September 22, 2022.

that President Trump 'actively misled him about the state of the law.'" *Grider*, 2022 WL 3030974, *3.

In order to satisfy the first prong, "Federal Courts of Appeals have concluded . . . that, for an entrapment-by-estoppel defense to be available, a 'government official or agent [must have] actively assured a defendant that certain conduct is legal.'" *Id.* (citing *United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996); *Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015); and *Chrestmann*, 525 F. Supp. 3d at 32 ("Each of [these] case[s] involved either a misunderstanding of the controlling law or an effort by a government actor to answer to complex or ambiguous legal questions defining the scope of prohibited conduct under a given statute.").   The *Grider* Court rejected the defendant's claimed defense because "former President Trump's statements did not in any way address the *legality* of the actions he urged his supporters to take.  He did not, for example, assure them that marching along Pennsylvania was 'lawful' or that occupying the Capitol grounds was 'permissible.'" *Id.* (emphasis in original).   Finally, although the *Grider* Court found it unnecessary to reach the question of whether the defendant relied "in good faith on any purported unlawful instruction by former President Trump," it observed that even if "former President Trump *did* direct Grider and others to break into the Capitol to obstruct Congressional proceedings, it is obvious that the President cannot 'waive statutory law' and 'sanction conduct that strikes at the very heart of the Constitution' in order to 'immunize from criminal liability those who seek to destabilize or even topple the constitutional order." *Grider*, 2022 WL 3030974, *4 (citing and quoting *Chrestmann*, 525 F. Supp.3d at 32-33).   Accordingly, the *Grider* Court determined that it "shall not instruct the jury on a defense of entrapment by estoppel." *Id.*

### A.       Entrapment-by-Estoppel

The defense of entrapment by estoppel on "applies to a defendant who reasonably relies on the assurance of a government official that specified conduct will not violate the law." *United States v. Alvarado*, 808 F.3d 474, 484–85 (11th Cir. 2015).  Such reliance must be "objectively reasonable." *United States v. Barker*, 546 F.2d 940, 948 (D.C. Cir. 1976); *United States v. Votrobek*, 847 F.3d 1335, 1344 (11th Cir. 2017).   As Chief Judge Howell wrote last year in rejecting the idea of an entrapment-by-estoppel defense for January 6 defendants:

> [A President] cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. . . . Put simply, even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

*Chrestman*, 525 F. Supp. 3d at 32-33. The D.C. Circuit came to the same conclusion when addressing Oliver North's contention that President Reagan authorized his obstruction of Congress in that case: "'[n]either the President nor any of [North's] superiors had the legal authority to order anyone to violate the law,' particularly if such 'orders,' explicit or implicit, represented nothing more than [the President's] desires." *United States v. North*, 910 F.2d 843, 891 n.24 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990).

Chief Judge Howell's opinion in *Chrestman*, which Judge Lamberth adopted with respect to this issue in the *Chansley* case, 525 F. Supp. 3d at 168, adopted a four-part test from the Tenth Circuit, which limits the entrapment-by-estoppel defense to narrow circumstances. *Chrestman*,

525 F. Supp. 3d at 33 (citing *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)). "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Cox*, 906 at 1191.

Here, the defendant cannot meet the requirements of the Tenth Circuit's four-part test. To start, Sheppard has not and cannot point to any government official who advised him that his conduct was legal or who provided any interpretation of the law that covered his alleged criminal conduct. Former President Trump's speech on January 6 could not serve this purpose. As but just two examples, former President Trump did not state that the U.S. Capitol grounds were no longer "restricted" under 18 U.S.C. § 1752(a), nor that efforts to corruptly obstruct the certification of the Electoral count would be permissible notwithstanding 18 U.S.C. § 1512(c)(2). He therefore did not "actively mis[lead]" defendant "about the state of the law defining the offense." *Cox*, 906 F.3d at 1191. Sheppard has not identified anyone else who might have authority to do so who did so either.

And even if Sheppard were able to point to a government official, which he cannot, he cannot show that his reliance was reasonable. "[R]easonable reliance occurs" only "if 'a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'" *United States v. Lynch*, 903 F.3d 1061, 1077 (9th Cir. 2018) (internal quotation marks omitted); *United States v. Corso*, 20 F.3d 521, 528 (2d

Cir. 1994) (adopting "sincerely desirous" standard).  It is objectively unreasonable to conclude that President Trump or any other Executive Branch official could authorize citizens to engage in violent or assaultive conduct toward law enforcement officers and interfere with the Electoral College proceedings that were being conducted.  Indeed, the Supreme Court has made clear that an entrapment by estoppel defense is not available in cases where a government official's directive constitutes a "waiver of law" beyond the official's lawful authority.  *Cox v. Louisiana*, 379 U.S. 559, 569 (1965) (Drawing an "obvious[]" distinction between identifying an area for lawful protest and "allowing one to commit, for example, murder or robbery."). Any "instruction" from a President or other Executive Branch official to wage an unlawful assault on the Legislative Branch of government would exceed those officials' constitutional authority.  *Id.*, citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588–89, 614 (1952) (enjoining actions taken by the President that exceeded his constitutional powers).  This is because "no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters."  *Chrestman*, 525 F. Supp. 3d at 32.  Accordingly, any purported reliance on the words of an Executive Branch official would be *per se* unreasonable.

Accordingly, Sheppard should be precluded from raising this defense.

### B. Public Authority

"The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity.'" *United States v. Fulcher*, 250 F.3d 244, 253-54 (4th Cir. 2001); Fed. R. Crim. P. 12.3(a)(1). "The difference between the entrapment by estoppel defense and the public authority defense is not great." *Burrows*, 36 F.3d at 882; *United States v. Baker*, 438 F.3d 749, 753 (7th Cir.

2006) ("The elements that comprise the two defenses are quite similar.").  Any such defense would fail for the same reasons identified above.

First, "[t]he validity of" the public-authority "defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]." *Burrows*, 36 F.3d at 881-82 (quoting *Baptista-Rodriguez*, 17 F.3d at 1368 n.18).[2]  The circuits that have considered the issue are unanimous on that point.[3]  Neither the President nor any other Executive Branch official has the authority to empower citizens to enter restricted Capitol

---

[2] In *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam), the court reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office. The defendants claimed they did so at the behest of E. Howard Hunt, a long-time civilian CIA agent who worked under the supervision of John Ehrlichman in the White House.  *North*, 910 F.2d at 879.  The case featured fractured separate opinions from the three-judge panel.  Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense. *Id.* (quoting *Barker*, 546 F.2d at 949 (opinion of Wilkey, J.).  But that portion of *Barker* was not the controlling rationale, and the panel majority in *North* subsequently rejected North's request for an instruction invoking his superiors' "apparent authorization of his action." *Id.* at 881. In any event, Judge Wilkey's application of reasonable reliance in *Barker*—where the defendants, each of whom had worked with the CIA, claimed that a government official (and previous CIA supervisor) authorized what they allegedly were told was a counter-espionage operation—has no analogue here.

[3] *See, e.g.*, *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *Fulcher*, 250 F.3d at 254 ("we adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) ("the public authority defense requires the defendant reasonably to rely on . . . actual, not apparent, authority"); *cf. United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (noting in dicta that defendants' claim that CIA officer had conspired with them to murder an ambassador "would not have created a defense if appellants' participation in the crimes had been established," and therefore describing evidence of the officer's employment with the CIA as likely "immaterial").

grounds, assault Capitol Police officers, or obstruct congressional proceedings. *E.g.*, *North*, 910 F.2d at 891 n.24.

Second, "a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere." *Burrows*, 36 F.3d at 882; *Fulcher*, 250 F.3d at 254; *Sariles*, 645 F.3d at 318-19. Again, any reliance on an Executive Branch official's statements would here be objectively unreasonable for the reasons given above, and again, Sheppard should be precluded from raising this defense as a matter of law.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

Sheppard cannot rely on these defenses. For these reasons, the Court should reject Sheppard's attempt to deflect responsibility, and preclude Sheppard from raising the public authority or entrapment-by-estoppel defense in advance of trial.[4]

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Craig Estes
CRAIG ESTES
Assistant United States Attorney
United States Attorney's Office
Massachusetts Bar No. 670370
craig.estes@usdoj.gov
(617) 748-3100

/s/ Sonia Mittal
SONIA MITTAL
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Illinois Bar No. 6314706
sonia.mittal@usdoj.gov
(202) 821-9470

---

[4] To the extent Sheppard may argue that statements from the former President are relevant to his intent, any such evidence should be limited under Federal Rule of Evidence 403 to those statements, and not include any witnesses (other than Sheppard himself) to testify about those statements.