UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 21-cr-203 (JDB) |
| : | |
| ALEXANDER SHEPPARD, : | |
| : | |
| Defendant. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE CERTAIN EVIDENCE AT TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the defendant's Motion in Limine to preclude general evidence of the events of January 6, 2021 (specifically, a compilation exhibit of U.S. Capitol Police closed circuit video footage that, in one form or another, has been admitted in more than two dozen other trials related to conduct committed that day on Capitol grounds), as well as "inflammatory" characterizations of the defendant and other individuals unlawfully at the U.S. Capitol on January 6 as "rioters," "insurrectionists," or "attackers."  ECF No. 59 at 8.  In essence, the defendant asks that the Court prevent the government from using evidence and language that accurately establishes and describes both his crimes and the unprecedented assault on the U.S. Capitol that occurred on January 6.  The material the defendant seeks to exclude is relevant to the charged conduct and fairly describes the riot, rioters, and his conduct; therefore, the Court should deny his motion.

**BACKGROUND**

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police.  Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police.  Only authorized people with appropriate identification were allowed access inside the U.S.

1

Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. Despite those efforts to maintain order and keep the crowd from entering the Capitol, individuals in the crowd forced entry into the U.S. Capitol around 2:00 p.m., including by breaking windows and by assaulting members of the U.S. Capitol Police. Other members of the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the

Senate Chamber until the sessions resumed.  As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the U.S. Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On or about December 30, 2020, defendant Alexander Sheppard ("Sheppard") posted the following on Facebook: "Millions of us will be in Washington D.C. on January 6th to protest the RIGGED election and the acts of WAR that China committed on our country.  I'll see you there!" Sheppard then traveled from Powell, Ohio, to Washington, D.C., on or about January 6, 2021.  As he was driving to Washington, D.C., Sheppard made a video recording of himself which included the following language:

> I'm currently on the road, I'm on my way Washington D.C., where me and millions of patriots are going to be protesting the rigged election that happened on November 3.  Donald Trump won in a landslide victory . . . Joe Biden is the worst presidential candidate of all time, he's committed treason, he's committed wicked acts on children, he's a pedophile, we're not going to stand for it, we're making America great again.

Sheppard posted that video to Facebook as well.  Once in Washington, D.C., Sheppard attended the "Stop the Steal" rally at the Ellipse.  He then walking the approximate 1.4 miles to the United States Capitol, where he entered the restricted grounds.  At approximately 2:15 p.m., he entered the Capitol building itself.  After entering into the Capitol, Sheppard made his way to the "Crypt" where he participated in overrunning the police line.  He then proceeded to the entrance of the Speaker's Lobby, where he was among the first to confront the officers guarding the doors while members of Congress were still being evacuated from the House Chamber.  Indeed, the defendant used his cell phone to record video, through the glass panes in the Speaker's Lobby doors, of members and staff being evacuated.  The defendant recorded another video of himself (from inside the Capitol building) in which he stated: "I'm here with some goddamn heroes, and we just shut

3

down Congress, they called an emergency session, they said we're too scared . . . they've shut down Congress, let's fucking go!" On January 19, 2021, an FBI Special Agent attempted to interview Sheppard at his home. He indicated that he desired to have counsel before answering any questions, but did state that he had driven from Powell, Ohio, to Washington, D.C., to protest the "rigged election."

Based on his actions on January 6, 2021, a federal grand jury returned a six-count indictment charging Sheppard with one count of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count One); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); one count of entering and remaining in the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four); one count of disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and one count of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). ECF No. 8.

## ARGUMENT

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court," while "Irrelevant evidence is not admissible." Fed. R.

Evid. 402. Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Ruled 401, 402, and 403 do support the defendant's requested relief.

**I.     General Evidence of the Events of January 6 and the Actions of Other Rioters at the Capitol is Relevant.**

Sheppard argues that the Court should exclude the government's video montage video compiled from U.S. Capitol Police closed circuit video footage which is "22 minutes in duration and portrays individuals who are not Mr. Sheppard engage in activities that Mr. Sheppard did not." ECF 59 at 4. Although the defendant is only one participant in the events at the Capitol on January 6, evidence of the broader context of the events of the day is both relevant to, and probative of, the alleged offenses.

The government intends to introduce evidence through a U.S. Capitol Police Officer familiar with the Capitol Police procedures leading up to January 6, 2021, including the security cameras put in place. From the videos created by those cameras on January 6, 2021, the government has developed a comprehensive exhibit covering the events of the day. As the Certification proceeding at the Capitol began, a large crowd gathered outside the U.S. Capitol. Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building, but the crowd broke through several barriers on the West front just before 1:00 pm. Another crowd gathered on the East Plaza of the building, encroaching on the area where the motorcade that brought Vice President Pence to the Capitol was located. Shortly before 2:00 p.m., the crowd on the West Front broke into the scaffolding, which was set up to construct the inauguration stage. At 2:13 p.m., individuals in the crowd forced entry into the U.S. Capitol building itself on the West side near the Senate. In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around

2:20 p.m. For the next two hours, rioters flooded the building and the grounds, while police attempted to clear them out. The police finally cleared the Lower West Terrace of the Capitol at approximately 5:10 p.m.

To convict him, the jury must find that Sheppard committed each offense with which he is specifically charged. It is not enough for the government to show that he was simply present near others who committed crimes across the Capitol building and grounds. But Sheppard's argument ignores the nature of these crimes as a collective action. It was the rioting mob's collective action that disrupted Congress, and Sheppard's knowledge of the collective riot bears on his *mens rea* for each of the charged offenses. Indeed, Sheppard's own recorded statements made both before and during the riot explicitly refer to the fact that he was there (or expected to be there) with "millions" of others. *See supra* ("Millions of us will be in Washington D.C. on January 6th to protest the RIGGED election and the acts of WAR that China committed on our country. I'll see you there!"; "I'm on my way Washington D.C., where me and millions of patriots are going to be protesting the rigged election that happened on November 3"; and "I'm here with some goddamn heroes, and we just shut down Congress").

Evidence about the official proceeding, and its disruption, as well of the actions of other rioters in multiple areas of the Capitol and the actions of Capitol Police with respect to the rioters, is relevant to the elements of the crimes with which Sheppard is charged. First, to prove Count One, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2, the government must establish that there was an "official proceeding" and the fact that it was disrupted. The official proceeding was the certification of the Electoral College vote and proving this charge requires presenting evidence involving the actions of other rioters at all locations of the Capitol building and grounds. Moreover, Count One includes the alternative

6

theory of aiding and abetting, pursuant to 18 U.S.C. § 2.  As this Court previously observed, "The government may argue that a wide range of actions—including actions that happened after the joint session had been suspended in light of the rioting mob that had entered the Capitol—'obstructed, influenced, or impeded' the joint session. *United States v. Brock*, No. CR 21-140 (JDB), 2022 WL 3910549, at *3 (D.D.C. Aug. 31, 2022).  Therefore, the conduct of other rioters is both relevant and admissible.

      Likewise, to prove Count Three, the government must prove that the defendant engaged in "disorderly or disruptive conduct" in a restricted area[1] "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(2).  The compilation video montage exhibit establishes how and when the disruption occurred.  Moreover, for Counts Two and Three, the government must prove the defendant knowingly engaged in certain conduct in a restricted area.  The compilation establishes that element by showing law enforcement efforts, both before and during the breach of the restricted area, attempting to keep unauthorized persons out of the restricted area.  Similarly, for Counts Four, Five, and Six, the government must prove the defendant knowingly engaged in certain conduct near the floor of either House of Congress and/or in the Capitol Buildings.  The compilation likewise establishes that element by showing law enforcement officers attempting to keep unauthorized persons away from and out of the floors of the Houses of Congress and the Capitol Building itself.  Furthermore, to prove Count Five, the government must prove that the defendant "utter[ed] loud, threatening, or abusive language" or "engage[d] in disorderly or disruptive conduct" with "the intent to impede, disrupt, or disturb the orderly conduct of a session

---

[1] A defendant may violate 18 U.S.C. § 1752(a)(2) by engaging in disruptive conduct (with the appropriate *mens rea*) while "within such proximity" to a restricted area.  The proof in this case will establish that the defendant was "in" the restricted area, not merely in close proximity to it.

of Congress or either House of Congress." Evidence of actions of other rioters at all locations of the Capitol building and grounds is relevant to prove that the loud, threatening, and abusive language and the disorderly and disruptive conduct occurring throughout the Capitol Building and grounds served to impede, disrupt, or disturb the orderly conduct of Congress.

The probative value of the compilation is even higher in a case such as this, when the defendant participated in disorderly and disruptive acts at a number of different locations within the Capitol Building itself. In any event, while the government does not anticipate focusing its evidentiary presentation on areas of the Capitol Sheppard did not go, in order to show the overall riot, its effects, the context of Sheppard's actions, and why the certification of the Electoral College vote was suspended, the government will need present evidence to show the actions of other rioters in various other areas of the Capitol building and grounds. None of the rioters were authorized to enter the Capitol. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not; everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. But for Sheppard's actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge Sheppard based on his own actions, the context of his actions—an ongoing riot—is highly relevant to their evaluation of those actions.

Furthermore, the government's use of any potential summary witnesses or evidence to this effect would permissibly "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). Any such aspects of the government's case would need to be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and require "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016).

Finally, even if this Court found the actions of other rioters to be prejudicial, the appropriate remedy is a limiting instruction and not exclusion. The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

The relevance of the video montage to the January 6 cases has been widely recognized. As Sheppard himself acknowledged, the video montage "capturing surveillance of thousands of other individuals on the Capitol Grounds and inside the Capitol building on January 6, 2021" has been introduced in "mostly every January 6 trial held thus far." ECF 59 at 2. Sheppard further acknowledges that he himself appears in one part of the video montage. ECF 59 at 2 & 4. Because the actions of other rioters are relevant and not unduly prejudicial, and because any prejudice can be addressed through an appropriate limiting instruction, admission of the video montage is warranted and appropriate.

9

## II. The Descriptors Accurately Describe the Events of January 6, and the Federal Rules of Evidence Do Not Preclude Them.

Sheppard argues that the Court should bar terms like "rioters," "insurrectionists," and "attackers" to describe him and other individuals unlawfully at the U.S. Capitol on January 6. Sheppard argues that such terms are "highly prejudicial." ECF 59 at 8. Sheppard's motion should be denied, because what took place at the Capitol on January 6, 2021, may be properly described as a riot, an insurrection, an attack, a breach, and an assault, and thus the individuals who participated in that rioting mob as "rioters," "insurrectionists," and "attackers." Thousands of people forced their way into the Capitol building during the constitutionally mandated process of certifying the Electoral College votes, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred law enforcement officers, and caused more than two million dollars in damage and loss. This was not a "protest" – this was an insurrection. As Chief Judge Howell observed in denying a similar motion *in limine* in which the defendant sought to preclude the use of terms such as "insurrection," "riot," "attack," "rioters," "mobs," the "[d]efendant . . . does not grapple with the fact that the words also accurately describe the events that occurred on January 6, 2021" and explained that, in any event, the "terms also overlap with elements of the charged offenses . . . . *Obstructing, influencing, or impeding an official government proceeding with intent to disrupt an electoral vote is a revolt against an established government, or an insurrection.*" *United States v. Vincent Gillespie*, 22-CR-00060-BAH, ECF 43 at 5-6 (emphasis added); *see also United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).[2]

---

[2] Likewise, in *United States v. James Doughlas Rahm, Jr.*, 21-CR-00150-TFH, the defendant sought to preclude the government and its witnesses from using terms such as "terrorists,"

10

Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (D.D.C. 2012) (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around Sheppard's crimes. Contrary to Sheppard's insinuations, what took place on January 6, 2021, was, in fact, a riot involving rioters, and an attack on the United States Capitol, the government of the

---

"terrorist attack," "rioters," "breach," "assault," "insurrection," or "carnage" to describe the events of January 6. ECF 35. Judge Hogan denied the motion without prejudice. Minute Order dated August 15, 2022. The defendant was subsequently found guilty after a stipulated bench trial. Minute Order dated October 13, 2022.

United States, and American democracy. After carefully considering the facts of other January 6 cases, many members of this Court have recognized the riot as just such an attack. *See*, *e.g.*, *United States v. Vincent Gillespie*, 1:22-cr-00060 (BAH) (collecting cases in which the D.C. Circuit and numerous Judges of this Court have used such terms throughout the January 6 proceedings to describe the events at the U.S. Capitol); *United States v. Brock*, 1:21-cr-00140 (JDB) Trial Tr. 5, 16-17 , Nov. 16, 2022 (describing the defendant as participating "in the riot at the United States Capitol on January 6th"; the various barricades that were "breached by the thousands of rioters . . . . Mr. Brock was part of that mob"; and the "rioters entering through those broken glass windows"); *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. "While these terms could trigger emotional responses in some individual, the mere use of these terms does not, at this stage, signal prejudice substantially outweighing their probative value. Thus, muzzling the government

and witnesses from employing commonly used phrases to describe the events on January 6, 2021, is impractical and does not amount to unfair prejudice in violation of Federal Rule 403." *United States v. Vincent Gillespie*, 22-CR-00060-BAH, ECF 43 at 6-7.  Prosecutors also need to use appropriate language—and not euphemisms—to describe accurately the nature and gravity of Sheppard's conduct.

## CONCLUSION

For the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Craig Estes
CRAIG ESTES
Assistant United States Attorney
United States Attorney's Office for the District of Massachusetts (detailee)
Massachusetts Bar No. 670370
craig.estes@usdoj.gov
(617) 748-3100

/s/ Sonia Mittal
SONIA MITTAL
Assistant United States Attorney
United States Attorney's Office for the District of Columbia
Illinois Bar No. 6314706
sonia.mittal@usdoj.gov
(202) 821-9470