**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Case No. 21-CR-203 (JDB)** |
| **ALEXANDER SHEPPARD,** | |
| **Defendant.** | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE**
**PENDING APPEAL**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully opposes Alexander Sheppard's ("Sheppard" and "the

defendant") motion to for release pending appeal ("Mot."). ECF Dkt. 116. Following a five-day

jury trial, Sheppard was convicted by a jury on five counts related to his participation in the breach

of the United States Capitol on January 6, 2021. On September 5, this Court sentenced Sheppard

to concurrent terms of nineteen months' imprisonment on Count One; twelve months'

imprisonment on Counts Two and Three; and six months' imprisonments on Counts Five and Six.[1]

Minute Entry Sep. 5, 2023. On October 2, 2023, the defendant filed a motion to delay his self-

surrender date of November 2, 2023. ECF Dkt. 112. The Court denied that motion. ECF Dkt. 115.

On October 29, 2023, just four days prior to the commencement of his term of incarceration,

Sheppard filed the instant motion for release pending appeal. ECF Dkt. 116. For the reasons set

forth below, including but not limited to Sheppard's failure to show that his appeal "raises a

substantial question of a law or fact likely to result in" reversal or even a reduced sentence,

---

[1] The jury found Sheppard not guilty on Count Four.

Sheppard's motion for release pending appeal is without merit and should be denied.

## I.    Background

A federal grand jury indicted the defendant on March 12, 2021. *See* Indictment, ECF Dkt. 8. Count One of the indictment charged Sheppard with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2; Count Two charged Sheppard with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); Count Three of the indictment charged Sheppard with engaging in disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); Count Four charged Sheppard with entering and remaining in the Rayburn Room of the House of Representatives, in violation of 18 U.S.C. § 5104(e)(2)(A); Count Five charged Sheppard with disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Count Six charged Sheppard with parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). *Id.* A five-day jury trial concluded on January 26, 2023, when the jury returned guilty verdicts on all charges except Count Four. ECF Dkt. 86; Minute Order Jan. 26, 2023.

Sentencing was scheduled for April 27, 2023. Minute Order Jan. 26, 2023. On April 26, 2023, the day before the scheduled sentencing hearing, Sheppard filed a motion asking the Court to continue the hearing and to grant leave for him to file an untimely motion for a new trial. ECF Dkt. 100. On that same date, the Court entered a minute order directing the government to respond to Sheppard's motion by the end of the day. Minute Order April 26, 2023. At the hearing the next day, the Court agreed to continue Sheppard's sentencing date notwithstanding concerns about the

timing of defendant's motion. Minute Entry April 28, 2023; ECF Dkt. 105 at 9 ("To be sure, the timing of Sheppard's motion was not ideal: he filed a barebones motion the day before his sentencing. It is not clear why his motion for leave to file could not have been submitted earlier, especially given that he did not simultaneously file a proposed motion for a new trial (and did not do so until a month later)").

On August 2, 2023, the Court denied Sheppard's motion for leave to seek a new trial, and sentencing was scheduled for September 5, 2023. ECF Dkt. 105 and Minute Entry Aug. 2, 2023. On September 5, 2023, roughly four months after he was initially scheduled to be sentenced and seven months after he was convicted, this Court sentenced Sheppard to concurrent terms of 19 months' imprisonment on Count One; twelve months' imprisonment on Counts Two and Three; and six months' imprisonments on Counts Five and Six. Minute Entry Sep. 5, 2023; ECF Dkt. 108 and 109.

On September 19, 2023, Sheppard filed his notice of appeal. ECF Dkt. 110. On October 2, 2023, roughly one month after sentencing, Sheppard filed a motion to delay his self-surrender date. ECF Dkt. 112. In that motion, Sheppard represented that his report date is scheduled for November 2, 2023, in a facility located in Illinois. *Id.* at 1. Accordingly, Sheppard argued that it was "likely" he would "not be able to have visitation with his family," *id.*, and sought to continue his self-surrender date for an additional two months until after the New Year holiday. *Id.* at 2. The government opposed. ECF Dkt. 113. In Sheppard's reply (filed on October 10, 2023), Sheppard raised a new argument as basis for delaying his self-surrender date, namely, that he now intended to file a motion to stay his sentence pending appeal and would do so within the week. ECF Dkt.

114 at 3 & n.2. On October 17, 2023, the Court denied Sheppard's motion to delay his self-surrender date and again ordered that he report to prison as directed. ECF Dkt. 115. In its memorandum opinion and order, the Court observed that Sheppard had failed to file a motion to stay sentencing pending appeal "at any point in the six weeks that have passed since sentencing." *Id.* at 4 n. 1.

On October 29, 2023, fewer than four days prior to his self-surrender date and almost two months after he was sentenced, Sheppard filed the instant motion for a stay pending appeal. ECF Dkt. 116. This motion arrived more than two weeks after the date defense promised to file it.   The next day, on October 30, the Court entered a minute order directing the government to respond to Sheppard's motion by no later than October 31, 2023—an expedited briefing schedule necessitated solely by defendant's dilatory tactics. Minute Order October 30, 2023.

## II.    Legal Standard

Once a defendant has been convicted and sentenced, he has no presumptive right to remain free on bail. Indeed, the Bail Reform Act of 1984 "creates a presumption against release pending appeal." *United States v. Chilingirian.* 280 F.3d 704, 709 (6th Cir. 2002). By statute, the defendant "shall . . . be detained" unless the court makes a series of findings in his favor:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds-
>> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c); and
>> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>>> (i) reversal,
>>> (ii) an order for a new trial,

> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total
> of the time already served plus the expected duration of the appeal
> process.
> If the judicial officer makes such findings, such judicial officer shall order
> the release of the person . . . ."

18 U.S.C. § 3143(b)(1). The defendant bears the burden of satisfying these statutory elements. *See Morison v. United States*, 486 U.S. 1306, 1306–07, 108 S.Ct. 1837, 100 L.Ed.2d 594 (1988).

The D.C. Circuit has adopted a two-part inquiry to determine whether a defendant's appeal raises a substantial question of law or fact likely to result in any of the various forms of relief enumerated in § 3143(b)(1)(B)(i)-(iv): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). "[A] substantial question is a 'close' question or one that very well could be decided the other way." *Id.* The standard is one that is "more demanding" than one that merely requires the issue to be "fairly debatable" or "not frivolous." *United States v. Libby*, 496 F. Supp. 2d 1, 4 (D.D.C. 2007). The *Perholtz* Court chose that standard, which it regarded as the "more demanding standard," as "it appears better to accord with the expressed congressional intent to increase the required showing on the part of the defendant" and in recognition that "[t]he law has shifted from a presumption of release to a presumption of valid conviction." 836 F.2d at 555-556. Likewise, it is the defendant who "bears the burden of rebutting this presumption and 'demonstrat[ing] that he has a substantial question to present [upon appeal] before he may be admitted to bail.'" *Libby*, 498 F.Supp.2d at 3 (citing and quoting *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986)).

III.        Argument

Sheppard has not met his burden with respect to any of the statutory requirements for release pending appeal, and his motion should be denied. First, for reasons set forth in greater detail below, none of the questions defendant raised in his motion are "substantial" or "close" questions that could have been decided "the other way," and are therefore not likely to lead to reversal or a reduced sentence. Second, Sheppard's motion does not demonstrate by clear and convincing evidence that he is not likely to flee or pose a risk to others, nor that his as-yet-unfiled appeal is not for the purposes of delay. His motion should be denied.

A.  Sheppard's Claims Fail to Raise Substantial Questions of Law or Fact Likely to Result in Reversal or a Reduced Sentence.

Sheppard has failed to meet his burden to show that any of the issues he seeks to raise with respect to Count One articulates a "substantial question," let alone one that is likely to result in reversal, a new trial, or a reduced sentence. Sheppard first represents that he will raise an appeal based on his belief that the evidence introduced at his trial was insufficient to sustain a conviction pursuant to 18 U.S.C. § 1512(c)(2) in light of the decision of the Circuit in *United States v. Robertson*, No. 22-3062, 2023 WL 6932346 (D.C. Cir. Oct. 20, 2023). Mot. 1. In particular, Sheppard incorrectly claims that *Robertson* requires proof that he used "independently felonious means" to obstruct the certification vote. *Id.* 5. Second, Sheppard again argues that Court's jury instruction defining "corruptly" for the purposes of 18 U.S.C. § 1512(c)(2) was erroneous. Mot. 1. It was not, and he has failed to carry his burden to demonstrate that the majority opinions in *Robertson* or *United States v. Fischer*, 64 F.4th 329 (D.C. 2023) suggest otherwise. His motion should be denied.

6

1.   *Robertson* Does Not Raise a Substantial Question Likely to Result in Reversal in Sheppard's Case.

According to Sheppard, "*Robertson* makes clear that the evidence at Mr. Sheppard's trial was not sufficient to sustain a conviction for Obstruction of an Official Proceeding because there was no evidence that Mr. Sheppard used 'independently felonious means' to obstruct the vote." *Id*. at 5. This reading of *Robertson* misstates its primary point, which is to make clear that "there are a range of ways to prove a defendant's 'corrupt' intent or action." *Robertson*, 2023 WL 6932346 at *5; *see also id.* at *8 (noting that the variety of corrupt methods by which the administration of justice may be impeded "is limited only by the imagination of the criminally inclined").

*Robertson* considered a sufficiency challenge to a Section 1512(c)(2) conviction in a case where the defendant had been charged with three additional felony counts: knowingly entering a restricted building when the Vice President was there while carrying a deadly and dangerous weapon; knowingly impeding the orderly conduct of government business while carrying a deadly and dangerous weapon, and altering, destroying, mutilating, or concealing cell phones with intent to impair their use in an ensuing investigation. *Id*. at *3. Recognizing that it need only identify "one way" that the evidence at trial supported a finding that Robertson acted corruptly, the *Robertson* court concluded that Robertson's independently felonious conduct "unquestionably" sufficed to establish his guilt. *Id*. at *5, 8, 10. Its analysis did not reach other conduct or factual scenarios, and it explicitly stated that "[i]n holding that felonious means are sufficient to establish 'corrupt' behavior, we do not suggest that they are always necessary to prove the 'corruptly' element." *Id*. at *10, 17.

As a threshold matter, it is Sheppard's burden to establish that his appeal will raise a substantial question of law likely to result in reversal. But in his motion, Sheppard fails to articulate why a misdemeanor offense does not suffice as an independently unlawful means, let alone identify caselaw

in support that position. Rather, he simply argues that *Robertson* left the issue open. That is not enough.

Having failed to provide any legal (or logical) basis for why acting "corruptly" requires independently

*felonious* conduct rather than independently *unlawful* conduct, Sheppard has necessarily failed to carry

his burden.

In fact, nothing in the *Robertson* analysis draws a line between felonious and non-felonious

unlawful conduct. To the contrary, the *Robertson* court repeatedly refers to "independently criminal"

or "independently wrongful" means. *Robertson*, 2023 WL 6932346 at *7. And the court found that:

> [T]he district court correctly informed the jury that it could find that
> Robertson acted "corruptly" if the government proved that he "use[d]
> independently unlawful means" when he obstructed, impeded, or
> influenced the Electoral College vote certification. S.A. 203. Defining
> "corruptly" as "wrongfully"—and treating independently unlawful
> conduct as "wrongful"—provides an objective measure of culpable
> conduct that is straightforward to apply: A court or a jury can easily
> determine whether the evidence shows that a defendant took unlawful
> action to obstruct, impede, or influence the proceeding.

*Id.* *9. Nothing in this analysis distinguishes felonious from non-felonious unlawful conduct—or even

suggests that such a distinction is possible. Sheppard's reliance on such a distinction is misplaced.

Likewise, *Robertson's* failure to consider whether the factual circumstances presented in

Sheppard's case are sufficient to sustain a conviction under Section 1512(c)(2) does not create a

substantial question of law. To the contrary, *Robertson* clarifies that there are "multiple ways" to prove

that a defendant acted corruptly, including via independently corrupt means, a corrupt purpose, or both.

*Id.*at *7. Indeed, *Robertson's* discussion of the "multiple ways" to prove a defendant acted corruptly is

particularly useful here. *Id.* at *8. While Sheppard may not have been charged with a second felony

offense, his conduct on January 6 unquestionably demonstrated that he actions included independently

corrupt means. The evidence at trial showed that he was among the first rioters to enter the Capitol

8

building, that he joined others in overrunning multiple police lines, and that he castigated officers guarding the last door separating rioters from evacuating members of Congress and their staff. PSR ¶16. More specifically, he entered through a door with shattered glass windows into a room with blaring alarms and broken glass. PSR ¶19. He was among the first rioters into the Crypt, where he encountered a police line blocking further access into the building and stood there shouting and chanting just feet from the officers while additional rioters filled the room. PSR ¶19. Once the riotous mob reached sufficient numbers, Sheppard pushed other rioters who pushed their way through the police line and so crossed into the House side of the Capitol. *Id.*; Ex. 507; 509; 518. Just past Statuary Hall, Sheppard joined rioters pressing up against yet another police line guarding the main entrance to the House Chamber, where he stood chanting and yelling at the police line while inside House members and staff sought to evacuate. PSR ¶20; Ex. 506. Still not satisfied, Sheppard made his way to the doors outside of the Speaker's Lobby, where he confronted yet another police line and spent several minutes screaming at them while they guarded the evacuation of the House Chamber. PSR ¶21; Ex. 509C; 510; 511; 303. At trial, Sheppard acknowledged that he interfered with the ability of those officers to do their job and conceded on the stand that his "presence there did make the officers' job more difficult." PSR ¶ 26. *Compare* 18 U.S.C. § 231(a)(3) (prohibiting any act to obstruct, impede, or interfere with any law enforcement officer during the commission of a civil disorder) with Ex. 509C; 510; 511; 303. This conduct formed the basis of four convictions other than under Section 1512(c)(2) and was significant enough that the Court sentenced Sheppard to the maximum term on each count; such conduct amply demonstrates Sheppard's employment of independently unlawful means.

Alternatively, *Robertson* emphasized that a defendant's "purpose" may be corrupt. *Id.* at *7. Again, that was unquestionably the case here. The evidence at trial demonstrated that Sheppard

"understood that the purpose of Congress's Joint Session on January 6, 2021, was to review and certify the Electoral College vote, and that he wanted to stop it from happening." PSR ¶16. For example, once inside the Capitol, Sheppard recorded a celebratory video proudly proclaiming, "I'm here with some goddamn heroes, and we just shut down Congress! They called an emergency session, they said we're too scared, they've shut down Congress. Let's fucking go!" PSR ¶19. On cross-examination, he acknowledged that "the security breach resulting from the mob breaking into the Capitol building caused Congress to shut down, and that he was celebrating that fact in his video." PSR ¶25. Sheppard made yet another video at the Speaker Lobby doors of House members and their staff evacuating the House Chamber, and acknowledged on cross-examination that they "were fleeing from the mob." PSR ¶ 26; Ex. 303. After leaving Washington, D.C., Sheppard continued to demonstrate his corrupt purpose, posting on Parler that, "I'm fine with hanging Pence tbh and I'm a conservative"; "Mike Pence deserves a firing squad"; and "We shouldn't hang Mike Pence. Firing squad!" Ex. 353, 354, 355.

Given Sheppard has failed to meet his burden to demonstrate that *Robertson* generates a substantial question of law in this case, he fails to establish that it is likely to lead to reversal or even a reduced sentence. See *id.* at *5 ("As an appellate court, we owe tremendous deference to a jury verdict."). Notably, while Sheppard objected to this court's jury instruction for Section 1512(c)(2) because it did not include language requiring "a hope or expectation or other financial gain or to obtain an unlawful benefit for himself or an associate," he did not argue a conviction under 1512(c)(2) required proof of "independently felonious means." The appellate court's review of this claim is therefore for plain error. *Id*. at 19. Moreover, to the extent that an appellate court concludes that the district court erred in instructing the jury on the meaning of "corruptly" (which it did not),

*Robertson's* discussion of the defendant's purpose suggests that any error would be harmless.

2.   The Jury Instruction Defining "Corruptly" Does Not Raise a Substantial Question Likely to Result in Reversal.

Sheppard next claims that his appeal will challenge the jury instructions defining "corruptly." In particular, Sheppard insists that to meet the definition of "corruptly" for purposes of 1512(c), the jury must find that he "sought an unlawful benefit for himself or an associate." Mot. 9.

Sheppard claims that "*Robertson* does not settle whether 'corruptly' must include 'an intent to procure an unlawful benefit either for himself or for some other person,'" Mot. 10, but he is mistaken. The *Robertson* majority makes clear that while seeking a benefit for oneself (or another) may be sufficient to show the requisite corrupt intent, it is not necessary. Sheppard "appear[s] to confuse sufficiency with necessity: [his] proposed definition[] of 'corruptly' may be sufficient to prove corrupt intent, but neither dishonesty nor seeking a benefit for oneself or another is necessary to demonstrate 'wrong, immoral, depraved, or evil' behavior within the meaning of § 1512(c)." *United States v. Roberston*, No. 22-3062, 2023 WL 6932346, at *12 (D.C. Cir. Oct. 20, 2023).

In denying a motion for release pending appeal in *United States v. Brock*, 21-CR-140 ECF Dkt. 107 in April 2023, this Court acknowledged that at that time it was "not entirely frivolous" to suggest that the definition of corruptly might give rise to a substantial issue. *Id*. at 8. However, *Robertson* has now foreclosed that argument here by making clear that Sheppard's preferred definition of corruptly (one that *requires* demonstration of an intent to seek a benefit for oneself or another), while sufficient, is not necessary. In any event, as this Court previously recognized, under *Fischer* "the mens rea of January 6 defendants whose 'behavior clearly meets the test of

11

independently unlawful conduct' would satisfy even the most stringent definition of 'corruptly' because their 'alleged intentions of helping their preferred candidate overturn the election results would suffice to establish a 'hope or expectation of either . . . benefit to oneself or a benefit of another person.'" *Brock*, ECF Dkt. 107 at 8 (citing and quoting *Fischer*, 2023 WL 2817988, at *7 (Pan, J.). Sheppard fails to offer any argument in favor of why the *Robertson* Court is wrong in rejecting his claim that his preferred definition of corruptly is in fact the only definition. Furthermore, even if his preferred definition of corruptly had been announced in *Robertson* as the exclusive definition (and it clearly was not), Sheppard fails to articulate why that definition would result in reversal given the facts of his case. Sheppard's argument based on the jury instruction for corruption neither raises a substantial question nor is likely to lead to reversal on appeal.

Finally, Sheppard's motion fails to carry his burden of showing that resolution of his enumerated appellate questions in his favor is likely to lead to reversal "of *all counts* on which imprisonment is imposed." *United States v. Brock*, 2023 WL 3671002, at *1 (D.C. Cir. May 25, 2023) (emphasis in original) (citing and quoting *United States v. Perholtz*, 836 F.2d at 556-557). Indeed, because Sheppard's motion raises challenges only with respect to his conviction on Count One there is no possibility that success on appeal would lead to reversal on all the other counts for which he has been sentenced to prison. Likewise, Sheppard received twelve-month sentences for his convictions on both Count Two and Three, as well as six-month sentences for his convictions on both Counts Five and Six, his appeal is not "likely to result in a sentence that does not include a term of imprisonment, or a sentence of imprisonment that is less than the total of the time already served plus the expected duration of the appeal process." *United States v. Shroyer*, 2023 U.S. App.

LEXIS 28129 (D.C. Cir. Oct. 23, 2023).

B.  <u>Sheppard Has Not Demonstrated that He Is Not a Flight Risk or Danger to the Community.</u>

In addition to demonstrating that his appeal raises a substantial question that will likely lead to reversal or a reduced sentence on all counts of conviction, the defendant must also demonstrate to the Court "by clear and convincing evidence" that he is neither a flight risk nor a danger to the community. "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c). Sheppard fails to meet his burden here.

Now that Sheppard has been convicted and sentenced to a significant period of incarceration, rather than merely charged with crimes, the incentive to flee or engage in dangerous conduct has grown. That concern is particularly salient here where Sheppard has repeatedly sought to delay the imposition of sentence while also continuing to attempt to justify his conduct on January 6 and to impugn the process by which he is being held to account for his actions that day. *See generally* ECF Dkt. 97 and 106. He has continued to do so even since his sentencing in early September 2023. *See, e.g.*, X post Oct. 29, 2023 ("Every January 6th defendant should have had their trial moved outside of Washington, D.C., that way We [sic] can have a jury of our peers, yet not a single one of us has …"); X post Oct. 30, 2023 ("January 6th was used to install Joe Biden"). While he remains entitled to hold and express his views, such statements demonstrate Sheppard's persistent belief that his perceived political grievances justified his criminal conduct on January 6 and would therefore justify similar conduct in the future. These comments undermine any claim that he has demonstrated "remorse" for his actions on January 6. Likewise, this Court determined,

13

as did the U.S. Probation Department, that Sheppard's willingness to testify falsely on multiple occasions at trial warranted an upward adjustment for obstruction of justice. PSR ¶¶29-30. For example, Sheppard testified on direct examination that when he recorded his celebratory video and announced that members of Congress were scared, he was really referring to their fear of "political consequences" and not their fear of the riotous mob that had stormed the Capitol. *Id.* Sheppard's lack of candor to the Court while on the stand and under oath raise additional concerns about his willingness to comply with Court orders and conditions. Finally, when he was arrested in Ohio shortly before trial for operating a vehicle under the influence, Sheppard failed to acknowledge the arrest until the USPO independently learned of it. In light of this documented lack of candor to the Court, the defendant has failed to meet his burden of establishing that he will not flea or pose a danger to others.

C. Sheppard Has Failed to Demonstrate that His Appeal Is Not for Purposes of Delay.

Finally, Sheppard must demonstrate that his appeal is not for purposes of delay. Again, the defendant bears the burden of proof on this issue and again, defendant offers no meaningful argument to meet that burden. *United States v. Nacchio*, 608 F.Supp.2d 1237, 1242 (D. Colo. 2009) (defendant "offers neither an affirmative statement that the appeal is not interposed for purpose of delay, nor any meaningful argument."). Rather, Sheppard does nothing more than to insist "that his appeal is not for the purposes of delay." Mot. 4. That is insufficient. Defendant has not yet filed his appeal, but as demonstrated above none of the issues defendant has indicated he intends to raise on appeal come close to presenting a "substantial question" that is likely to lead to a reversal or reduced sentence. Moreover, Sheppard has a history of filing last-minute requests seeking to delay

imposition of his sentence. ECF Dkt. 100 (motion to continue sentencing hearing filed one day before sentencing hearing); ECF Dkt. 112 (motion to delay self-surrender date); and Dkt. 116 (motion for release pending appeal filed less than four days prior to start of prison sentence). On that record, defendant's failure to offer more than a conclusory statement to the contrary falls far short of meeting his burden.

## IV.    Conclusion

Accordingly, defendant's motion for release pending appeal should be DENIED.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:    /s/ Craig Estes_____
CRAIG ESTES
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Massachusetts Bar No. 670370
craig.estes@usdoj.gov
(617) 748-3100

/s/ Sonia Mittal_____
SONIA MITTAL
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Illinois Bar No. 6314706
sonia.mittal@usdoj.gov
(202) 821-9470

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Craig E. Estes</u>
CRAIG E. ESTES
Assistant U.S. Attorney

Dated: October 31, 2023

16